**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAVON DOWLING

                      Plaintiff,

     - v -                                   Civ. No. 9:17-CV-0647
                                                      (MAD/DJS)

C.O. E. SCHLEICHER, *et al.*,

                      Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

JAVON DOWLING
Plaintiff, *Pro Se*
261 Malcolm X Blvd. Apt. 2A
Brooklyn, New York 11233

HON. BARBARA D. UNDERWOOD          DAVID A. ROSENBERG, ESQ.
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    *Pro se* Plaintiff Javon Dowling brings this civil rights action, pursuant to 42 U.S.C. § 1983, asserting a claim arising from his incarceration at Greene Correctional Facility ("Greene C.F.") while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 11, Am. Compl at p. 1.[1] Currently pending before the Court is Defendants' Motion to Dismiss the Amended Complaint pursuant to Federal Rule

---

[1] Page 1 of the Amended Complaint is neither paginated nor contains numbered paragraphs.

of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 22; *see* FED. R. CIV. P. 12(b)(6). The Motion was filed on February 1, 2018. *Id.* Plaintiff's opposition to the Motion was initially due on February 20, 2018, but on February 22, 2018, Plaintiff wrote to the Court advising that he had not received a copy of the Motion and requesting additional time to respond. Dkt. Nos. 23 & 24. On March 6, 2018, the Court granted Plaintiff an extension of time until April 6, 2018, to respond to the Motion. Dkt. No. 25. Plaintiff was also ordered to notify the Court on or before March 16, 2018, as to whether he had received a copy of the Motion papers. *Id.* Plaintiff did not provide any notice to the Court regarding receipt of the Motion. In light of his *pro se* status, Plaintiff was granted a final extension of time to respond to Defendants' Motion, until June 4, 2018. Dkt. No. 26. To date, Plaintiff has failed to oppose the Motion to Dismiss.

For the reasons that follow, the Court recommends that Defendants' Motion be granted in part and denied in part and that the Defendant Fredrickson be dismissed as a Defendant in the action.

## I. STANDARD OF REVIEW

On a Motion to Dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)

(overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625*, *AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that

[he or she] has not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted) (citation omitted). Nonetheless, a *pro se* complaint must state a "plausible claim for relief." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)).

## II. SUMMARY OF THE COMPLAINT

In accordance with the above standard of review, the following relevant facts adduced from the Amended Complaint are taken as true. On September 2, 2016, Plaintiff filed a grievance at Greene C.F. alleging that he had been threatened with retaliatory disciplinary

actions because he had missed an outside work assignment to attend sick call or a mandatory call-out, and because he had requested clarification of facility procedures regarding sick call and mandatory call-outs. Am. Compl. at ¶ 9. Plaintiff failed to name any specific officers in this grievance because he feared retaliation. *Id.* at ¶ 11. On September 28, 2016, the Inmate Grievance Program supervisor determined that Plaintiff's claim was groundless, because Plaintiff failed to identify the officer who had threatened him; Plaintiff agreed to resolve the grievance prior to a hearing. *Id.* at ¶¶ 10-12.

Subsequently, on October 26, 2016, Plaintiff participated in an outside work assignment with two other inmates, which was supervised by Defendant Schleicher. *Id*. at ¶ 13. At the request of the supervising civilian cook, Defendant Schleicher asked that one of the three inmates volunteer to work overtime; all three of the inmates declined to volunteer either due to conflicting mandatory call-outs, or because of previously working overtime shifts. *Id.* at *¶¶* 13-14. Defendant Schleicher insisted that he would be forced to pick someone if no inmate volunteered, at which point Plaintiff responded by saying that this would violate DOCCS policy, and suggested that Schleicher speak with a supervisor. *Id.* at ¶¶ 14-15. Defendant Schleicher again insisted that he would pick someone to work the overtime shift, and Dowling responded by saying "if you choose me you may as well get the cuffs because I'm just going to quit." *Id*. at ¶ 16. Another inmate volunteered to work overtime to avoid any problems. *Id.* at ¶ 17. Once Plaintiff was taken back to the correctional facility, he requested to speak to a supervisor, Defendant Barkman, about the matter, and suggested he may file a second grievance. *Id.* at ¶¶ 17-18. Defendant Schleicher

contacted Defendant Barkman, and told Plaintiff that Defendant Barkman was aware of the situation, but was busy and would speak to him the next day. *Id.* at ¶ 18.

Plaintiff alleges that Defendants Schleicher, Barkman, and Fredrickson then issued a false misbehavior report charging him with threats, disobeying a direct order, and harassment while on the outside work detail with Defendant Schleicher and confined him to the Special Housing Unit ("SHU").[2] *Id.* at ¶¶ 19-20.[3] On October 31, 2016, Plaintiff attended a Tier III disciplinary hearing regarding the report; it was adjourned so that statements could be obtained from Plaintiff's requested witnesses. *Id*. at ¶ 21. Plaintiff claims that corrections staff intimidated his named witnesses so that they would not testify at the hearing. *Id.* at ¶ 22, n. 1. On November 9, 2016, Plaintiff was found guilty of violating prison rules, harassment, and refusing to obey a direct order, and he was sentenced to serve ninety days in SHU, and also lost privileges. *Id.* at ¶ 23. After serving seventy-seven days of his SHU sentence, Plaintiff was released back to general population. *Id.* at ¶ 26.

Plaintiff's original Complaint contained a retaliation claim, as well as a due process claim. Dkt. No. 1, Compl. Following an initial review by the District Court, Plaintiff filed an Amended Complaint, in which he withdrew his due process claim. Dkt. Nos. 6 & 11.

---

[2] Plaintiff alleges that he was issued this misbehavior report on October 21, 2016. *Id.* at ¶ 20. Plaintiff alleges that the report dealt with the events of October 26, however; the Court therefore presumes that the date of October 21, 2016 was an error and that the report was in fact issued sometime between October 26 and October 31, when the hearing was commenced.

[3] In the Amended Complaint, paragraph 19 is incorrectly labeled as paragraph 15; it is sequentially paragraph 19.

Plaintiff's First Amendment retaliation claims against Defendants Schleicher, Fredrickson, and Barkman survived the District Court's initial review of the Amended Complaint. Dkt. No. 20.

## III. DISCUSSION

Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a First Amendment retaliation claim against Defendants. Dkt. No. 22, Defs.' Motion, p. 1. Defendants assert that Plaintiff fails to allege any retaliatory motive by Defendants or causal nexus between Plaintiff's protected activity and the adverse actions taken against him by Defendants. Dkt. 22-1, Defs.' Mem. of Law at p. 4.

### A. Legal Standard

To state a First Amendment claim for retaliation, a plaintiff must demonstrate: (1) he or she was engaged in constitutionally protected speech or conduct; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds, Swierkewicz v. Sorema N.Z.*, 534 U.S. 506 (2002)). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection."

*Dawes v. Walker*, 239 F.3d at 493.

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with scepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Dawes v. Walker*, 239 F.3d at 491 ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."); *see also Graham v. Henderson*, 89 F.3d at 79.

### B.  Analysis

Defendants presume solely for purposes of this motion that Plaintiff has sufficiently alleged the first two elements of a retaliation claim: that he engaged in protected activity, and that an adverse action was taken against him. Defs.' Mem. of Law at p. 5. Defendants' sole contention in their Motion is that Plaintiff fails to allege any causal nexus or retaliatory motive on the part of Defendants. *Id.* The Court finds that the causal connection alleged between the protected activities taken by Plaintiff and the adverse actions taken by Defendants is sufficient for this claim to proceed against Defendants Schleicher and Barkman.

To survive a motion to dismiss, the plaintiff "must advance non-conclusory allegations." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 106 (2d Cir. 2001). Temporal proximity between the protected activity and the retaliatory conduct may be suggestive of a casual connection. *Rivera v. Lawrence*, 2009 WL 1734735, at *4 (N.D.N.Y. June 18, 2009). Here, Plaintiff filed a grievance on September 2, 2016, sought

redress through a superior officer and to file a grievance on October 26, 2016, and he was found guilty following his November 9, 2016, disciplinary hearing. Am. Compl. at ¶¶ 9, 18-19, & 23. While the Second Circuit has not provided any bright line indicating when a temporal relationship becomes too attenuated to prove a causal relationship, a time period as great as six months may sufficiently support an inference of a causal nexus. *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases and positing that a lapse of four or five months between protected activity and adverse action may support an allegation of a casual connection); *Mateo v. Gundrum*, 2011 WL 5325790 (N.D.N.Y. Aug. 30, 2011). Thus, a two month time lapse is not too large to preclude a causal relationship.

Regarding Defendants' motivation to retaliate, Plaintiff alleges that the corrections officers retaliated against him for filing a grievance in September 2016 and also for requesting to speak with a supervisor regarding an incident between Plaintiff and Defendant Schleicher. Am. Compl. at p. 1. Defendants contend that Plaintiff failed to show any retaliatory motive for the Defendants, since none of the Defendants were specifically named in any formal grievance filed by Plaintiff. Defs.' Mem. of Law at p. 5. Plaintiff's failure to name a corrections officer in a grievance does not preclude the possibility of retaliation for that grievance, however. *See Gomez v. Graham*, 2016 WL 8652781, *13 (N.D.N.Y. June 16, 2016) ("The fact that the defendants who allegedly retaliated against the plaintiff were not the subject of the grievance that is claimed to have precipitated that assault does not necessarily negate the possibility that a reasonable fact finder could conclude that the two are

linked.").

In addition to the grievance Plaintiff allegedly filed in September 2016, Plaintiff also spoke with Defendant Schleicher in October, seeking to speak with Defendant Barkman about the mandatory call-out policy and potentially to lodge a complaint about Defendant Schleicher. Am. Compl. at ¶¶ 9, 15, & 18. Defendant Schleicher relayed that Barkman was aware of the situation; Plaintiff alleges that Defendants proceeded to issue a misbehavior report against him, alleging that he failed to abide by work program policies. *Id.* at ¶ 18.

Given that Plaintiff made multiple complaints about the work program, one of which was directly to Defendant Schleicher and indicated he may file a grievance against him, Plaintiff has sufficiently alleged a retaliatory motive for Defendant Schleicher. In addition, Plaintiff alleges that Defendant Barkman was aware "of the situation," and that he then participated in filing the false misbehavior report against Plaintiff. *See* Am. Compl. at ¶ 18. At this early stage, Plaintiff has sufficiently alleged that Defendant Barkman was aware of Plaintiff's protected activity; as such, the Court recommends that Plaintiff's claim as to Defendant Barkman not be dismissed. *See Alston v. Bellerose*, 2015 WL 4487973, *9 (D. Conn. July 23, 2015) ("[A]t this stage in the proceedings, those allegations support the inference that the named Defendants in this action were generally aware of Plaintiff's participation in a protected activity, and that consequently, Plaintiff has stated a plausible claim for retaliation. Evidence, adduced through discovery, may suggest a contrary conclusion. . . . Should that be the case, Plaintiff's retaliation claim would be fit for summary disposition."). As such, Plaintiff has alleged sufficient facts to suggest that Defendants

Barkman and Schleicher retaliated against Plaintiff, and thus the Court recommends that Defendants' Motion be denied as to these Defendants.

Plaintiff does not plausibly allege facts that would support a claim of retaliation as to Defendant Fredrickson, however. Plaintiff does not provide any factual allegations regarding Defendant Fredrickson in his Amended Complaint. *See* Am. Compl. Indeed, "[p]laintiff has not alleged any facts which even suggest that [defendant] was aware of his protected activity." *Levola v. Bellinger*, 2011 WL 13273630, *5 (N.D.N.Y. July 20, 2011). As such, his claim against him cannot be maintained, and the Court recommends granting dismissal of this claim. *See Graham v. Henderson*, 89 F.3d at 79 ("A complaint of retaliation that is 'wholly conclusory' can be dismissed on the pleadings alone.").

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 22) be **DENIED** as to Plaintiff's First Amendment retaliation claim against Defendants Schleicher and Barkman; and it is further

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 22) be **GRANTED** as to Plaintiff's First Amendment retaliation claim against Defendant Fredrickson; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which

to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14)[4] DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 3, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).