**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAVON DOWLING,

                              Plaintiff,

        - v -                                                    Civ. No. 9:17-CV-647
                                                                (MAD/DJS)

SGT. BARKMAN and C.O. SCHLEICHER,

                              Defendants.

**APPEARANCES:**                             **OF COUNSEL:**

JAVON DOWLING
Plaintiff, *Pro Se*
261 Malcolm X Blvd.
Apt. 2A
Brooklyn, New York 11233

HON. LETITIA JAMES                           DAVID A. ROSENBERG, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Javon Dowling brought this action, pursuant to 42 U.S.C. § 1983,

alleging that Defendants violated his civil rights.  Dkt. No. 11, Am. Compl.  The only

remaining claims in this case allege First Amendment retaliation.  *See* Dkt. No. 20.

Presently pending is Defendants' Motion for Summary Judgment, pursuant to FED. R.

CIV. P. 56(b).  Dkt. No. 40.  Defendants' Motion provided notice to Plaintiff of his

obligation to respond to the Motion and the consequences for failing to do so. *Id.* at p. 3. On July 19, 2019, the Clerk of the Court provided Plaintiff a similar notice regarding the filing of the Motion. Dkt. No. 41. Plaintiff filed no response to the Motion. The Court then *sua sponte* granted Plaintiff an extension of time in which to respond. Dkt. No. 42. Plaintiff, however, has still filed no response to the Motion. Defendants seek summary judgment both on the merits of Plaintiff's First Amendment claim and on the ground that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). For the reasons set forth below, the Court recommends that Defendants' Motion be granted.

## I. BACKGROUND

On September 2, 2016, Plaintiff filed a grievance at Greene C.F. alleging that he had been threatened with retaliatory disciplinary actions because he had missed an outside work assignment to attend sick call or a mandatory call-out, and because he had requested clarification of facility procedures regarding sick call and mandatory call-outs. Am. Compl., ¶ 9. The grievance did not name either Defendant Barkman or Defendant Schleicher. Dkt. No. 40-5, Pl.'s Dep., pp. 66-67; Dkt. No. 40-10, Barkman Decl., Ex . A. It, in fact, identified no correctional staff by name. Barkman Decl., Ex. A. The grievance was resolved on September 28, 2016 through a discussion of sick call procedures. *Id.* Neither Defendant had any role in processing or investigating the grievance or was aware of the grievance prior to the commencement of this litigation. Barkman Decl., ¶ 8; Dkt. No. 40-6, Schleicher Decl., ¶ 7.

On October 26, 2016, Plaintiff participated in a work assignment outside Greene C.F. with two other inmates, which was supervised by Defendant Schleicher. Schleicher Decl., ¶ 9; Am. Compl., ¶ 13.  During that assignment, Defendant Schleicher asked that one of the three inmates volunteer to work overtime; all three of the inmates declined to volunteer either due to conflicting mandatory call-outs, or because of previously working overtime shifts.  Schleicher Decl., ¶ 9; Am. Compl., ¶¶ 13-14. Defendant Schleicher then directed Plaintiff to stay.  Schleicher Decl., ¶ 9.  Upon being told this Plaintiff responded by telling Defendant Schleicher "you may as well get the cuffs because I'm just going to quit."  Am. Compl., ¶ 16; *see also* Schleicher Decl., ¶ 9.

Schleicher reported the incident with Plaintiff to Defendant Barkman who advised Schleicher to return to Greene C.F. with Plaintiff.  Schleicher Decl., ¶ 9; Barkman Decl., ¶ 9.  Upon return to the facility, Schleicher issued a misbehavior report to Plaintiff that was reviewed by Barkman.  Schleicher Decl., ¶ 12 & Ex. B; Barkman Decl., ¶ 11. Plaintiff was found guilty of two of the three charges in the misbehavior report. Schleicher Decl., ¶ 16.  The disciplinary action was eventually administratively reversed as a result of an issue with the recording of the disciplinary hearing.  Am. Compl., ¶ 27.

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with

[ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not

extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, when a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion."). Moreover, all properly supported facts set forth in Defendants' Statement of Material Facts that have not been specifically controverted shall be deemed admitted. N.D.N.Y.L.R. 7.1(a)(3).

## III. DISCUSSION

### A. Plaintiff's Retaliation Claim

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action.'" *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). The Second Circuit has warned that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). This is true because retaliation claims are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d at 491.

Here, Plaintiff alleges that the misbehavior report was issued in retaliation for his prior grievance. Pl.'s Dep., p. 65.[1] "[T]he filing of prison grievances is a constitutionally

---

[1] While the Amended Complaint alleges that the retaliation may also have been the result of seeking to speak with Schleicher's supervisor or threatening to file a grievance, Am. Compl., ¶ 15, during his deposition Plaintiff only asserted his prior grievance as a basis for the alleged retaliation. Pl.'s Dep. at pp. 65-67 & 71. Nor, even if properly before the Court, do these claims provide a basis for defeating summary judgment. First, it does not appear that the request to speak to a supervisor qualifies as a protected activity. *Jones v. McElroy*, 2015 WL 410928, at *6 (E.D. Cal. Jan. 30, 2015), *report and recommendation adopted*, 2015 WL 1014653 (E.D. Cal. Mar. 5, 2015) ("the court has found no authority holding that a prisoner's request to speak to a correctional supervisor is constitutionally

protected activity." *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003). In addition, the filing of a misbehavior report has been found to constitute an adverse action for purposes of a retaliation claim. *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 373 (N.D.N.Y. 2010) (citing *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)). Solely for purposes of this Motion then, the Court presumes that Plaintiff could satisfy the first two elements of a retaliation claim.[2]

The third element, however, requires Plaintiff to show a causal connection between the protected activity and the adverse action. *Holland v. Goord*, 758 F.3d at 225. On this record, Plaintiff cannot do so. First, the protected activity – the grievance – was, by Plaintiff's own admission, not lodged against either Defendant and accused neither of any wrongdoing. Pl.'s Dep., pp. 66-67 & 71. Both have averred that they were unaware of the grievance at any time prior to the issuance of the misbehavior report. Schleicher Decl., ¶ 7; Barkman Decl., ¶ 8.

> While filing grievances is an activity protected by the First Amendment, [Plaintiff] fails to identify a time when he filed grievances against [Defendants] prior to the issuance of the allegedly false misbehavior report. Thus, defendants' adverse actions of filing the misbehavior report could not

---

protected speech."). Second, "it has not yet been clearly established that plaintiff's alleged warning to defendant [] that he would file a grievance is speech protected by the First Amendment." *Adams v. O'Hara*, 2018 WL 5728040, at \*13 (N.D.N.Y. July 24, 2018), *report and recommendation adopted*, 2018 WL 4590015 (N.D.N.Y. Sept. 25, 2018). As a result, qualified immunity would be appropriate as to a claim that the threat of filing a grievance was protected speech. *Id.* In an appropriate case, the Court may raise qualified immunity *sua sponte* in considering a summary judgment motion. *Montgomery v. Town of Colonie*, 2017 WL 4990627, at \*3 (N.D.N.Y. Oct. 30, 2017).

[2] Defendant Barkman argues that his endorsement of the misbehavior report did not constitute adverse action. Defs.' Mem. of Law at p. 11. His Declaration in support of the Motion indicates that "all inmate misbehavior reports *must be endorsed* by an Area Supervisor." Barkman Decl., ¶ 11 (emphasis added). This at least suggests that without his action the report could not have been issued. That is sufficient, when viewing the evidence in the light most favorable to Plaintiff, to conclude that Barkman's actions were part of the adverse action taken against Plaintiff.

be a substantial factor in the alleged retaliation because the grievances against them were filed after the misbehavior report, not before.

*Diaz v. Fischer*, 2010 WL 1132772, at \*8 (N.D.N.Y. Feb. 23, 2010), *report and recommendation adopted in part*, 2010 WL 1133074 (N.D.N.Y. Mar. 23, 2010); *see also Bey v. Miller*, 2016 WL 6787277, at \*10 (N.D.N.Y. Oct. 19, 2016), *report and recommendation adopted*, 2016 WL 6769097 (N.D.N.Y. Nov. 15, 2016) (no retaliation claim when plaintiff had not filed a grievance against defendant prior to issuance of the misbehavior report).

> Other relevant factors for considering whether a causal connection exists include:
>
> (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation.  The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action.

*Monko v. Cusack*, 2013 WL 5441724, at \*10 (N.D.N.Y. Sept. 27, 2013) (internal citations and quotations omitted).  While the period of time between the alleged protected activity and adverse action here was less than two months and might support a temporal connection, temporal proximity alone is insufficient to avoid summary judgment. *Quezada v. Fischer*, 2017 WL 9509993, at \*27 (N.D.N.Y. Aug. 31, 2017), *report and recommendation adopted sub nom. Quezada v. Gutwein*, 2017 WL 4286304 (N.D.N.Y. Sept. 27, 2017); *Cole v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 5394752, at \*25 (N.D.N.Y. Aug. 25, 2016), *report and recommendation adopted*, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016).  Plaintiff appears not to have had a significant

disciplinary record prior to this incident, Pl.'s Dep., pp. 32 & 35, but also conceded much

of the conduct alleged in the misbehavior report.  Schleicher Decl., Ex. B; Am. Compl.,

¶ 16.  Plaintiff was initially found guilty of two of the three charges in the misbehavior

report, though it appears that that finding was ultimately reversed on a procedural ground.

Am. Compl., ¶¶ 23 & 27.  Finally, Plaintiff offers no direct evidence of retaliatory motive

on the part of Defendants and they specifically disclaim any such motive.  Schleicher

Decl., ¶ 18; Barkman Decl., ¶ 15.

For these reasons, the Court recommends granting Defendants' Motion for

Summary Judgment on the ground that no dispute of material fact exists as to the lack of

a causal connection between Plaintiff's protected activity and the alleged adverse action.

**B. Exhaustion under the Prison Litigation Reform Act**

Defendants seek summary judgment on the alternative ground that Plaintiff failed

to exhaust his administrative remedies regarding a retaliation claim against Barkman and

Schleicher.  Defs.' Mem. of Law at pp. 12-16.

*1. The Grievance Process*

The Prison Litigation Reform Act provides, in pertinent part, that "[n]o action shall

be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The

Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate

suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative

determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

### *2. Plaintiff's Failure to Properly Grieve Claims against Defendants*

Defendants offer evidence that Plaintiff did not file a grievance regarding alleged retaliation by Defendants. Dkt. No. 40-12, Mauro Decl., ¶¶ 13 & 18; Dkt. No. 40-14, Seguin Decl., ¶¶ 9 & 13. At his deposition Plaintiff testified that he did not file a formal grievance regarding this claim, but wrote a letter to a Deputy Superintendent at Greene C.F. and asked that if that individual could not resolve the matter to send it to the grievance office. Pl.'s Dep., pp. 99-101. Defendants submit that no such letter was ever received by officials at Greene C.F. Dkt. No. 40-17, Murphy Decl., ¶ 7. Plaintiff also admitted at his deposition that he received no response to the letter he allegedly mailed,

11

Pl.'s Dep., p. 101, and that he "never followed up with grievance." *Id.* at p. 103. Plaintiff never filed an appeal regarding this matter with CORC. Seguin Decl., ¶ 15.

A letter to correctional officials is not a substitute for a formal grievance. *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (holding that regardless of whether prison officials know of the plaintiff's complaints in a "substantive sense," procedural exhaustion of remedies must still occur); *Chaney v. Vena*, 2017 WL 6756645, at *3 n. 3 (N.D.N.Y. Nov. 29, 2017), *report and recommendation adopted*, 2017 WL 6734186 (N.D.N.Y. Dec. 29, 2017); *Salmon v. Bellinger*, 2016 WL 4411338, at *4 (N.D.N.Y. July 5, 2016), *report and recommendation adopted*, 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016) (citing cases). The lack of any evidence suggesting that Plaintiff followed the formal DOCCS grievance process and thus failed to exhausted his administrative remedies is any additional basis for granting summary judgment here.

### *3. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused*

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable

of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *Martin v. Wyckoff*, 2018 WL 7356771, at \*5 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019). Given Plaintiff's failure to oppose the Motion, no basis appears on the record for concluding that DOCCS' grievance procedure was unavailable to him. This is especially true given that Plaintiff did pursue a grievance, through to CORC, during the same time period at issue here which demonstrates that the grievance process was available to him. *See* Seguin Decl., Ex. B.

Accordingly, the Court recommends that summary judgment is also appropriate based on Plaintiff's failure to exhaust his administrative remedies.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 40) be **GRANTED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v.*

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   December 20, 2019
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge